■ In the Matter of the Claim of JEAN M. FITZPATRICK, Appellant, v HOLIMONT, INC. et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [669 NYS2d 88] —Mercure, J. Appeal from a decision of the Workers' Compensation Board, filed November 22, 1996, which ruled that an employer-employee relationship existed between claimant and Holimont, Inc.

In March 1994, while performing her duties as a member of the ski patrol at Holimont, Inc., a ski area in Cattaraugus County, claimant was seriously injured in a collision with a snowmobile. Following a hearing, it was determined that an employer-employee relationship existed between claimant and Holimont; the decision was affirmed by the Workers' Compensation Board upon administrative review. Claimant appeals.

Whether an employer-employee relationship exists is a factual matter for the Board to resolve and its determination must be upheld if supported by substantial evidence, even if other evidence in the record could support a contrary conclusion (*see, Matter of La Celle v New York Conference of Seventh-Day Adventists*, 235 AD2d 694, *lv dismissed* 89 NY2d 1085; *Matter of Long v Schenectady County Young Men's Christian Assn. [YMCA]*, 227 AD2d 723). While no one factor is dispositive of the issue, relevant factors include the right to control the claimant's work, the method of payment, the right to discharge, the furnishing of equipment and the relative nature of the work (*see, id.*).

Here, Holimont pays the cost of operating the ski patrol, provides workers' compensation coverage for the members of the ski patrol and vaccinates members of the ski patrol against Hepatitis-B at its own expense. Furthermore, according to the handbook approved by Holimont and supplied to the ski patrol, Holimont retains the right to discharge and discipline any

member of the ski patrol. Holimont also designates the times that the ski patrol inspects and "sweeps" the slopes, during which time the ski patrol reports the condition of the slopes via a two-way radio supplied by Holimont; the report is then used to determine whether the slopes will be opened or closed.

Members of the ski patrol wear a parka bearing the name Holimont Ski Patrol. Holimont subsidized claimant's purchase of the parka and, upon turning the parka in, claimant was reimbursed $240 out of the $250 that she paid for it. In addition, testimony established that, although not paid a salary per se, ski patrol members are given free skiing privileges for the season and other benefits in exchange for their participation in patrolling the ski slopes. In view of the foregoing, we conclude that substantial evidence supports the decision that claimant was an employee of Holimont.

Briefly addressing a few of the points raised in the dissenting opinion, we first note our disagreement with the dissent's reliance upon the decision of the Court of Appeals in *Matter of Camphill Vil. v Workmen's Compensation Bd.* (23 NY2d 202). There, the sole issue before the Court was whether "coworkers" for a tax-exempt nonprofit membership corporation organized to house, train and rehabilitate mentally handicapped persons aged 16 years and over were employees under the Disability Benefits Law (Workers' Compensation Law §§ 200-242) or, rather, whether they were exempt from coverage as "volunteers in and for a religious, charitable or educational institution" (Workers' Compensation Law § 201 [5]). Notably, Workers' Compensation Law § 2 (4), which controls here, has no corresponding exemption, rendering that authority wholly inapt. We are also unpersuaded by the dissent's portrayal of the Holimont Ski Patrol as a wholly independent entity exercising exclusive direction and control over the ski patrollers' activities. To the contrary, the record supports Holimont's contention that the ski patrol's functions were inextricably intertwined with the operation of the facility and, in fact, that the ski patrollers who directed claimant's activities were themselves Holimont's employees.

Crew III, Yesawich Jr. and Peters, JJ., concur.

Mikoll, J. P. (dissenting). I respectfully dissent. Holimont, Inc., is a private ski club which operates a ski facility under the same name. Promulgated pursuant to Labor Law § 867, 12 NYCRR part 54 requires ski facilities to utilize a ski patrol in their operation so as to conform to safety skiing codes. Holimont uses Holimont Ski Patrol (hereinafter the ski patrol), a separate organization which also has dues-paying members, to

fulfill ski patrol functions on its slopes. All members of the ski patrol are members of the National Ski Patrol, a volunteer organization recognized by congressional act as a volunteer organization dedicated to promoting ski safety (*see*, 36 USC § 1101 [51]; § 1501). The ski patrol has its own constitution and bylaws which declare it to be a volunteer organization. A handbook prepared and issued by the ski patrol includes, *inter alia*, the manner in which the ski patrol is to operate, the duties of ski patrollers and a disciplinary code of escalating penalties for violation of the rules of the ski patrol. Ski patrollers are admitted to membership and discharged from membership by action of the ski patrol membership committee. In order to qualify, a candidate must be a member of the National Ski Patrol system and pass rigorous safety tests. Holimont agreed to use the ski patrol's handbook in the operation of the ski patrol at its facility.

Ski patrollers wear identification parkas which bear insignias "Holimont Ski Patrol". Claimant paid $250 to purchase the parka and received $240 back after surrendering the jacket. Claimant received no compensation from Holimont nor did she apply to it to be a ski patroller. We note that there was no finding that claimant made use of a free guest pass, available to claimant on the days she served as a ski patroller, and the Workers' Compensation Board found no payment to claimant from Holimont. She was permitted to serve as a ski patroller by action of the ski patrol membership committee. Holimont never issued Internal Revenue Service 1099 or W-2 forms to her or any ski patroller. All directions as to claimant's activities emanated from the ski patrol which ran the patrol, including assigning patrol duties. The record bears no evidence that ski patrollers answered to paid employees of Holimont.

On the day of the accident, claimant volunteered to patrol the slopes in response to a sign posted in the ski patrol clubrooms for a party for employees and the ski patrol sponsored by Holimont. She was struck by a snowmobile, resulting in the loss of her leg. We note that when Holimont reported the accident to the Board, they denominated claimant as a "volunteer patroller". The Board found that claimant was an employee covered by workers' compensation benefits.

I would reverse. The record in this matter fails to support by substantial evidence the conclusion reached by the Board that claimant was an employee of Holimont. There is no evidence that claimant was hired by Holimont as a ski patroller or received any remuneration as recompense for services rendered (*see*, Workers' Compensation Law § 201 [12]); nor is there

substantial evidence that Holimont managed, controlled or directed claimant. To the contrary, evidence indicates that claimant's ski patrol activities were directed and controlled exclusively by the ski patrol, a self-governing association of volunteers to which she belonged as a dues-paying member. It is beyond dispute that this ski patrol organization is a volunteer organization dedicated to the promotion of skiing safety. Its charter and bylaws support such a conclusion.

In *Matter of Camphill Vil. v Workmen's Compensation Bd.* (23 NY2d 202),* the Court of Appeals held that for employment to exist there must be a finding that there is a legal contract of hire under which the worker obtains benefits as recompense for services rendered. Claimant was never hired by Holimont, which opted to use the volunteer services of the ski patrol to discharge the duties required of it pursuant to 12 NYCRR part 54.

Among the factors listed in the Board's decision which it cited as benefits received by claimant and as an indication of employment is the finding that Holimont provided all the cost of the ski patrol. The record belies this finding. Ski patrollers, in fact, supplied their own skiing equipment, clothes, including boots, two-way radio holders and first-aid kits. On the other hand, Holimont provided safety equipment which included toboggans, splints, a handbook (which was compiled and issued by the ski patrol and which sets out the ski patrol's rules as to patrol service) and a Hepatitis-B vaccine. All these, in fact, constitute tools necessary to facilitate rescue operations. These items were not only necessary but their provision by Holimont was required by law. Their costs are legitimately those of Holimont and not the ski patrol. The items were incidental items to doing ski patrol work which Holimont had to supply and are not incidents of employment.

The Board based its finding of control and direction of claimant in Holimont's right to terminate members of the ski patrol. The record, to the contrary, discloses that such authority reposed solely in the ski patrol, that is, not only did it control termination but admission to membership in the ski patrol (*see, Cardello v Mt. Hermon Ski Area*, 372 A2d 579 [Me]). It is clear that Holimont had a relationship with the ski patrol but had no control over the ski patrol members.

The Board also concluded that Holimont's act of obtaining workers' compensation to cover ski patrollers was indicative of

---

* This case dealt with disability claims whereas in the instant case workers' compensation is implicated. The predicate for compensation under either category requires a finding of employment.

an employer-employee relationship. An employer cannot confer workers' compensation benefits unless the individual falls within the category of a covered employee. The Workers' Compensation Law defines categories of employees. Holimont urges that claimant falls within Workers' Compensation Law § 3 (1) (Group 19). Under Workers' Compensation Law § 3 (1) (Group 19), an employer may bring an employment that is not listed in this section within the coverage of the chapter by paying said employees pursuant to Workers' Compensation Law § 50. There was no finding of payment here by the Board. Since Holimont did not pay its ski patrollers, this section is inapplicable.

Further, Workers' Compensation Law § 2 (4) defines an employee as follows: " 'Employee' means a person engaged in one of the occupations enumerated in section three or who is in the service of an employer whose principal business is that of carrying on or conducting a hazardous employment upon the premises or at the plant, or in the course of his employment away from the plant of his employer". The category of ski patroller is not enumerated in Workers' Compensation Law § 3. Since the law does not permit an inference that members of the ski patrol were employees in the statutory sense, I believe the Board's determination is erroneous.

The Board found an incident of employment in the fact that the ski patrollers decide when the slopes are safe to be opened and are clear of skiers and when they can be closed, and conveyed this information to Holimont. These actions are controlled by the ski patrol's handbook issued by the ski patrol. It does not implicate any control by Holimont but reflects reasonable cooperation to operate the ski slopes safely between volunteer ski patrollers and Holimont.

Ordered that the decision is affirmed, without costs.